Thank you. Good morning, Your Honors. May it please the Court. My name is Maria Starczewski. On behalf of the appellants here, a group of class members who have sued the Boeing Company, the issue here are the factors to be used in a regression analysis. Do you want to reserve any time for rebuttal? Yes, I would like to reserve three minutes for rebuttal. Thank you. Thank you, Your Honor. A little higher. A little higher? There you go. The factors to be used in a regression analysis of disparate impact in Boeing's salary determination. Procedurally, this matter was heard before Judge Lasnik. Initially, Judge Lasnik made some findings on summary judgment. Then there was a jury trial on the disparate treatment issue. That is not being appealed at this time. Then the judge had reserved for himself the decision on disparate impact, and he then made findings on that, and those are the findings that are being appealed. And again, the only issue appealed are the factors to be used by the experts. There were two experts, one on each side, Mr. Siskin for the plaintiff, Mr. Ward for the defendants. The factors that are in question are whether performance ratings, which had been considered because the variables are under the control of the employer, retention ratings, which were alleged to be discriminatory or at least alleged to have a disparate impact on people, whether those are appropriate. Defense argument on that is that retention ratings were found to not have been an actionable event by Judge Laskin. Let me interrupt a moment. At this trial, there were two eminently qualified experts who disagreed about whether or not these two factors were important in the analysis. Judge Lasnik decided which of the two was more believable in terms of the factors and made the decision. We have re-review for abuse of discretion. Would you agree? No, I don't, and one of the cases on that that is sort of interesting is one of the two cases just faxed over by counsel for defense. The second case is an unpublished opinion, and so I will not be addressing it. However, the first case, U.S. v. Torres-Hernandez, does address factors used in statistical analysis and uses a de novo standard, except then towards the end of the opinion, Torres-Hernandez discusses the types of factors for which a clear error standard would be appropriate. And that's not the standard used in this opinion. In Torres-Hernandez, the court says that the most refined data should be used, the best data should be used, and that is part of the de novo portion of the review process. However, then in the clear, in a footnote at the very end of the case, they say that if, in fact, this is a matter of a battle of the experts, then if such a case were to arise, a district court would have to weigh the experts' competing evidence, including the experts' qualifications. So you're arguing a combination of de novo and clear error? Yes, I am. All right. But if we don't accept that there's a de novo review here, under the clear error, if we assume, let's just assume for argument here that the proper standard of review is clear error, what's your best argument that the district court clearly erred in concluding that the SJC level and the year of hire factors should be included in the regression analysis? My best argument is that there were factors included in the regression analysis which were in themselves previously found to be discriminatory. My best argument is on page 12. Well, I don't know that I agree with you on that. Tell me what the evidence is of that, that they were found to be previously discriminatory. Right. The Demographic Salary Analysis Project, DSA, by Paul Wells, the manager in compensation of Boeing, which did find that minority employees had been historically paid less than white employees, and there was a particular finding as to Asian employees between the years 1997 to 1999. Also, the fact, and this was found by Mr. Siskin, that when these factors were put in, there was a jump in the figures mathematically. For instance, in the time frame March 1997, there was an influx of people through March 2001, and the disparity of pay jumps back up when that influx of people is looked at. That disparity of pay is then pushed forward into looking at the current salary. My other argument is that when you're weighing salary on the one hand, it is really not appropriate to use salary to weigh salary. For instance, But there's a lot of arguments in there that how much someone was paid is not just an indication of what they're paid, but it's information about the sophistication of their work, too. Correct. Because obviously, and I don't think you have to be a rocket scientist, as it were, for Boeing to come to the conclusion that obviously we know in this society that we're going to pay more for certain expertise, and there's a lot of discussion in here about people that are just doing rote work as opposed to people that are doing cutting-edge engineering work and all of that. Now, I mean, why aren't all of those, you know, why can't salary be some indication of that? You have to factor out the salary, which is what Mr. Siskin attempted to do. He did have a factor in that for the type of work performed. However, he factored that out. Well, where's the case that says, you know, what case says you have to factor out salary in regression analysis? That's, you know, I mean, if you want to claim de novo review or something, I want to hear, I want to see, you know, show me as a matter of law that there's some case that says you can't consider either of these factors. It's a legal error. I don't think there is one out there. The cases that I cite are cases where the fact that women had been historically paid lower salaries, those lower salaries were then used to justify current lower salaries, and that was not permitted. You cannot use historically biased data, historically disparate data to justify current levels of salaries. But I guess I'm just not, I'm not making the jump for how that case stands for the proposition that, including the SJC level and the year of hire factors in the regression analysis, that it's as a matter of law that that's wrong. I don't see that case holding for that proposition. You see, Your Honor, they not only included those levels, they included them several times over and then boosted their importance artificially by inverting the weight for the year of hire and the prior salary, giving that a double weight for the older the numbers were, the more weight they gave them. And aren't you still making a factual argument as opposed to a legal argument? And our standard of review is very deferential on the facts. But Judge Lasnik did not make findings on those particular issues at all. And when there are no findings, then that's a different standard, possibly requiring a reversion back for it. See, I think what we're kind of simply saying here, and I can't say that I'm speaking for Judge Bolton, but what I'm hearing her say and what I'm thinking is if you had won and counsel for Boeing were standing up here and making the arguments, then I would be asking him the same questions. I mean, whoever won after the battle of the experts I think would have the uphill battle here. And if you had won and they had lost and they were saying, well, you should have followed Dr. Siskin as opposed to Dr. Ward, I would say that that person would have the same problem that, you know, that you're having here. It just seems like there was evidence that was heard, that they were both qualified, they explained why they did it, and the judge found one to be a more appropriate way and found that it gave more weight to that expert. End of story. However, the judge in his findings did not address the fact of why it is appropriate to consider salaries, prior salaries, in determining whether current salaries are discriminatory or not. It's simply not in the findings. Also, the fact that the retention ratings were used. Are you saying that there was no evidence as to why year of hire was used? I mean, there was evidence in the trial as to why year of hire was a proper factor, right? There were arguments back and forth in the trial, yes. And then what Judge Lasnik said is, I found this expert more convincing than your expert. Correct, but did not address the issue of year of hire. And in this particular case, there are a number of cases where, although maybe the standard of review isn't discussed in that degree, yet they do talk about which factors are appropriate to use in these types of statistical analysis. And the case that I cited in my reply brief at page 6 is the Supreme Court case of Ward's Cove, where they do say that certain factors must be present in a statistical analysis, so that the resultant analysis is squared with the cases and the goals behind the statute. One of the goals behind the statute, although now the statute has been changed since Ward's Cove, the goal certainly has not, is to prevent prior discrimination from being used to go forward into to allow later discrimination to be used. And I believe that the Can you point to any evidence in the record that demonstrates that the starting salaries of the class members were statistically lower than the starting salaries of the non-class members in the same year? In the same year? In the same year. I haven't seen any. I couldn't find any. That's why I'm asking you. Is there anything in the record? No. The only two things that I have in my notes are the Boeing study, the DSA study by Paul Wells, and then Dr. Siskin's statement that the statistics jump when there was this influx of people, and a lot of them were, a huge amount of those were of Asian descent, and the disparity of pay jumped back up. But whether those are, you see, the disparate treatment, which was tried to the jury, would have had those kinds of issues decided as to comparing one type of person to another and whether the salaries were the same in a given year. That would be more of a disparate treatment analysis. The disparate impact analysis doesn't really require. But doesn't that go to your argument that this is all tainted? No. I mean, if you don't have anything in the record that shows that, I mean, that seems to me that that could be evidence of the taint that you're talking about. Possibly. Am I wrong? Yes. Okay. How do you respond to the district court's observation that a strong correlation between SJC level and sophistication of engineering work was mandated by the governing collective bargaining unit? And doesn't that suggest that the SJC level is a proper consideration when comparing the salaries of a class and a non-class of engineers? That does sound correct. The judge did find that there was a fair process used. But, again, that is the type of finding that is made when one analyzes disparate treatment and not disparate impact. You don't really look at the process that was used except to determine at the end whether, in fact, the impact on people. But you're saying SJC level is not a proper consideration. So I'm saying, I mean, and the judge, the district judge seemed to go back to the collective bargaining unit and talk about that and say, why isn't it a proper factor if the collective bargaining unit, you know, that there's a strong correlation between the SJC level and sophistication of engineering work that was mandated by the governing collective bargaining unit? You know, that was something that went on in the process there. And my argument is twofold. One is that this is more of a disparate treatment analysis. And, number two, that the SJC level includes both higher salary, the salary at the time of hire, which includes the year of hire, which includes prior salaries, and that both of those factors were again factored into the regression analysis. So, in fact, those factors were put in twice by Dr. Ward. They were put in because they're contained within the SJC level. And they were put in again. And then they were given greater weight depending on how far back they were. And then they were artificially weighed to make the end result. Also significant to Judge Lesnik was the fact that these SJC levels could be appealed. I use that word loosely. And that, in fact, I think, I don't know if I'm remembering correctly, something like 40 percent of individuals suggested that their SJC levels should have been something different, and they had a process, and many, many of them were changed. Wouldn't that also support Judge Lesnik's conclusion that SJC level was a significant and appropriate factor to be used by the experts in the regression analysis? Right. They could be appealed. The issue of whether employees were sufficiently motivated or encouraged to appeal was brought up only briefly because a lot of these events did not, or a lot of these levels did not actually change the employee's employment to that extent. They did determine the salary level by the SJC level. But in this case, though, the regression analysis, again, it multiplied these factors by putting them in again, including them in the SJC level and including them again. I think Judge Ferguson also had a question. What percentage of your class came from Rockwell or McDonnell Douglas? That I don't know. Do you have any idea? It's not in my notes. I'd have to go back and look. How many in the class? All I know is that there were about a hundred and some new hires that were during this time of disparity of pay where the expert noticed that it jumped up. To know how many in the class, I'd have to go back to the record. Is there anybody in the class who were original employees, basically? Their first employment was with the Boeing. That I don't know. I mean, that wasn't part of your claim, because Boeing took over McDonnell Douglas and what was the other one? Rockwell. Rockwell. So it's not included in this that the people that were bought out, that they're the ones that are treated disparately. No. I mean, it might be, but it's not part of this. It wasn't part of Dr. Siskin's analysis that I used for this argument. Okay. All right. You're at three minutes. Do you want to reserve that for rebuttal? Yes, please. Thank you. Good morning. May it please the Court, Jeff Hollingsworth from Perkins Coie in Seattle on behalf of the Boeing Company. Also with me in the courtroom is my partner, John Aslan, who tried this case with me in May of 2004. And let me start by making reference to a little bit of that background, because I think it may be helpful. You can sit at the table if you want him up there. I mean, that's not, I mean. He's welcome to if he wants to. I think he's decided to sit back there. I'm not sure. Okay. The case was tried to a jury and to the Court. In the normal process for a Title VII case, the disparate impact claims were tried to the Court. The disparate treatment claims were tried to the jury. This is not a summary judgment proceeding in which the Court might be evaluating whether there were disputes of fact or making determinations about the legal sufficiency of the evidence. This is a case that comes to this Court after a full trial in which the jury heard all the evidence and ruled against the plaintiffs. Well, I think we know that. I mean, focus, you can tell that by the focus of our questions. So maybe we can just jump you right to some of the things that we have questions about. Certainly. How do you respond to the appellant's argument that starting salary data is tainted with discrimination because Boeing hired more class members when the labor market, when labor market demand and salaries were low? That seems to be central to some of the argument. That's related to their argument about higher year and the way they intersect higher year with starting salary. Dr. Ward explained in his testimony that higher year and starting salary are actually different, that the regression does not double count. And if the Court wants to find that in his testimony, it is in the supplemental excerpts of record for Dr. Ward at pages 35 to 36 and also 73 to 74. He explained that the regression methodology teases out or prevents any double counting and that there is a difference between higher year and starting salary. Higher year refers to the salaries paid based on market forces over an entire higher year. Starting salary would affect the individual salaries of individuals within that year. And the way I would respond to the argument is to say as to starting salary, it doesn't matter at all in the regression. If one looks at Dr. Ward's stepwise regressions, which are exhibits, the exhibits at the end of the supplemental excerpt of record, I think Exhibits 1, 2, 3, you can see Dr. Ward measuring each factor and its impact on the overall result. And he did studies in which he left starting salary out entirely and still found that there was no disparate impact. So starting salary by itself drops out of the picture. It doesn't make any difference what the starting salaries were. You would still find, and Judge Lasnik did find, looking at their expert testimony, that there was no evidence of a disparate impact based on the statistical analysis. With respect to higher year, the only reason Dr. Siskin didn't use higher year, he testified, was that he found it, and I think the word he used was troubling, because he was finding that higher year was bouncing back and forth in terms of whether it was good or bad. That determination by Dr. Siskin is directly refuted by Dr. Ward in his testimony, which, of course, Judge Lasnik heard, and so Judge Lasnik could easily have concluded, and it would not be clear error for him to have concluded, that there is nothing inappropriate with higher year. It's not a duplicative factor. It's not an improper factor. It's not one that is discriminating against plaintiffs in the first instance. Finally, plaintiffs never teased out higher year as a facially neutral employment practice that they were attacking in the litigation. It was not part of their claim at any time in the lawsuit, and certainly not at the time that the case reached trial after multiple class certification proceedings, that to treat higher year as an employment practice, Judge Lasnik said, is simply illogical. It's simply a fact. In order to construct an argument that there's something wrong with higher year in these circumstances, you would have to find evidence of some quite complex conspiracy on Boeing's part to hire particular people in particular years. And that couldn't be intentional in this case, because any claims of intentional discrimination. Well, but it doesn't have to be intentional to be disparate in fact. That's correct, Your Honor, but it's quite illogical to argue that that could have happened, that Boeing could have engaged in an employment practice of hiring people in particular years. It's not an employment practice. It simply is a fact that they hired people in particular years, and the market was what it was. If their argument was that the starting salaries within that year were discriminatory, that argument is foreclosed in terms of intent by the jury verdict, and it's foreclosed by the facts in the record, which create at least a dispute as to whether that's the case, which Judge Lasnik preferred one side over the other. Is this just a battle of the experts? It is just a battle of the experts. Okay, so then if you had lost and Judge Lasnik had felt that Dr. Siskin's analysis was more appropriate, then you'd lose here, right? I wouldn't have appealed. Yes, you would. I know, that's all a little bit. Maybe that's disingenuous. And I know if you were appealing, you wouldn't sit up there and say, well, I concede, I should lose. But if it is a battle of the experts, if this is a correct characterization, would you concede then that it's clear error review? If it were a battle of the experts, then basically if the judge, you know, if there's evidence to support what the judge found, which expert the judge believed, then it's over for the losing party? Your Honor, I think that is the way the system is supposed to work. The system, in its wisdom, consigns to the district court factual determinations so that the fact finder can hear all the evidence, can listen to all the cross-examination, can explore all the documentary evidence, can explore the demeanor of witnesses, one's sense of confidence in one person or another and their explanations, and arrive at a factual determination as to which is the more sensible approach. That's exactly what Judge Lasnik did. That's what the jury did, too, although we're not reviewing their findings. The jury trial was how long? The whole trial was about two weeks, and all of the evidence was presented simultaneously to both fact finders. The only thing that Judge Lasnik heard that the jury did not hear, aside from obvious asides, would have been the closing argument on the disparate impact claim, which was done after the jury rendered its verdict. And that, and you read in Judge Lasnik's memorandum of opinion, his use of the word belated, is because that is the first point in the trial in which these arguments that these factors, here of higher level, were themselves somehow inherently defective, that they were improper to utilize because they either were not factually supported or they somehow had their own disparate impact. There is no evidence that these factors had a disparate impact. Well, now, the disparate impact, you don't have a right to a jury trial on that, right, because it's equitable relief? That's correct. That's the reason for this procedural. Under Title VII and the Civil Rights Act of 1991, there's no jury trial unless the parties stipulate to one for the disparate impact claim. But for obvious considerations of economy, and because neither party objected to it, the whole case was tried simultaneously. So the jury heard all the same evidence, and so did the judge. The standard review is clear error. The evidence plainly supported the conclusion that level was related to the sophistication of work. So the contention by plaintiffs that level was based on salary and is somehow circular is, A, a factual contention reviewed for clear error, and, B, it's factually wrong. Dr. Siskin didn't use level because he believed it was determined by salary and made it circular. The evidence at the trial was that's not the case. It was determined by the sophistication of work. Salary was a consideration, but not an improper one. And what Judge Bolton mentioned, the 40 percent, 40 percent of the levels were changed. Some of that was done by managers saying this isn't right, and some of it was done through this appeals process. The question also came up just quickly about whether any of these individuals came from McDonnell, Douglas or Rockwell. They did not. This was a State of Washington case involving engineers and technical workers represented by the SPIA union in the State of Washington. So Judge Leibniz's conclusion that level was an appropriate consideration because it was based on the sophistication of work is not clear error. And the opinion of Boeing's labor economist, Dr. Ward, is that's an appropriate consideration, and so it was considered. With respect to higher year, I've already addressed that briefly. The only reason Dr. Siskin didn't use it is he found it troubling because it appeared to be bouncing back and forth. Dr. Ward testified that was not the case. With respect to starting salary, you reach the same result whether you consider starting salary or not. And I would invite the Court to look at Dr. Ward's stepwise regressions, like Exhibit 1, for example, in which when you go through the regression, you can see the effect of each factor. And then he put some models at the bottom which include a model that does not contain starting salary at all. And that factor still shows no disparate impact. So starting salary is a red herring and a non-issue. There were a few other things that were said that I'd like to respond to in plainest argument because I think they're wrong. One of them is that performance ratings or retention ratings were somehow A, biased or tainted, and B, used in the analysis. Neither of those factors played any role in Dr. Ward's analysis. And a look at his exhibits will show that neither of those is a factor that was considered as a regression factor. Plainest reference to these earlier studies that had been done by Boeing, so-called DSA studies, and their remarking in their brief several times that the case was filed in 1999 before levels were established simply betrays a misunderstanding of the record. The case overall, the disparate treatment case, spanned a number of years, but the disparate impact case was very limited in time because the original complaint did not contain a disparate impact claim that was based on a Title VII charge. After the case was filed, one of the plaintiffs filed a class disparate impact charge, and that started, with amendment, a new statute of limitations for the disparate impact claim. So the disparate impact claim, as Judge Lassnick's memorandum of opinion indicates, only runs from September of 2000 forward. It doesn't go back into 1998, 1997, and 1999 when these Boeing studies were being done. It only relates to the later time period. And for technical workers, because summary judgment was entered and not appealed from for the time period after March 2001, they only have about a six-month window of time in this case where the evidence would be germane. So in short, the proper standard of review is clear error. This is a battle of the experts. The district court did not clearly err in determining that level represented the sophistication of work, that it was a proper regression variable, and that when included eliminated any statistically significant disparity in the salaries of class members and whites, between class members and whites. The district court did not err in concluding that higher year, representing the particular labor market in years when an employee cohort is hired, is a proper regression variable, and that when included also eliminates the disparate impact that would otherwise be seen in the statistics. And the district court properly concluded overall that these factors should have been considered, that that's the preferable expert analysis, and that when the analysis is done in that manner, there is no evidence of disparate impact. And therefore, the case should have been and was properly dismissed. The Court has no further questions. Anyone have any further questions? No. Further questions. Thank you for your argument. Thank you. Two brief points. The second I'll make from page 7 of my reply brief of appellant, and that is the 2001 Ward's Cove decision, which although it discusses a clear error standard in the decision, it's not very clear on which standard it is using, but it does say that the correct factors must be used in statistical analysis, which is different than the language that you hear in cases that defer to the trial court and use a clear error standard. Here it says the court erred in relying on plaintiff statistics to reach that particular result because the court was using a different type of worker to measure other workers. But, again, those are factors within a statistical analysis, and the court said that the proper factors must be used. The second issue I'd like to bring up is the arguments as to the statute of limitations, and the court did find that the statute of limitations had passed on some of the claims. However, that these factors, the issues of prior salaries, can be used for other purposes, and in this case we're asking the court to look at these issues and use them for the purpose of determining whether some of these variables were tainted. Thank you. Thank you. Thank you both for your argument. This matter will now stand submitted. This court is in recess until tomorrow at 9 a.m. All rise. This court's presentation stands adjourned. Thank you. I'd like to see that. Well, there's one that's going on over there. It's over there at the White House. It's a conference of approaches. They're trying to make an interview. I think it was quite chaotic, but we haven't done much yet. I understand. One of the lawyers sent out an invitation to the Prime Minister. And then he walked away. But I thought the interview should stay here for a while. I don't know. I think that's part of the objective of the interview. I'd like to know what was your own reaction to this accusation? Did they attempt to do it? This is one of the people I talked about attempting to meet at the White House. I'm going to presume that the information was made on purpose, right? Because many of the people in this extremist process, as well, were devalued in debt over time. I'm not a person who's made an interview myself every second time. I understand all of that discussion. In the first chapter, when we mentioned the notion of debt, it's been mentioned that some of the extremists do quite a bit in debt. But I must say that I don't take this seriously. I think that yes, we do take it seriously. But I'm not quite sure to what extent. Do you think that this incident is a wake-up call for Muslims in Canada? Well, I think it is. I think it is. I think it is. I think it is. Thank you. It's a terrible pain in the wrist joint because it's been so long. I love it. I even do the same thing. So that area, the region in the south of Costa Rica, was really not a pain in the wrist. They don't really see what's going on in that state of possession. And that needs to be a separation between the state and the nation of religion and politics. Thank you. What is it that you're trying to do? I've read that you're trying to push all of the South American political people off their side. I don't see what it is you're trying to do at all. I'm interested in how influential the Muslim community is. They are the people that you have described as extremists. Well, I'm not an extremist. I'm not an extremist. I don't believe in extremism. I don't even believe in that. What I can say is that the religion that is established by the Muslim community is also an extremist. It has a major cultural and psychological influence on people's behavior. And it stems from a long, long time ago. The Hebrew Empire of Saudi Arabia was a member of the United States, which means that all these beautiful shepherds in the vicinity were not involved in civil rights because they were important to the United States. And anyone who was, I should say, politically progressive or nationalist, you know, so the entire South American leadership that is in place right now, whether it be in the 60s or the 70s, there was an association that was not as powerful as it now is. It's been very, very hostile to many. It was a very difficult time for the country. And so now we've come to a stage where we have to look at this as a very delicate issue. How are we going to build institutions where, let's say, you think the vast majority of Muslims are cut off from this kind of thinking? So what's the second order of that? Well, the United States, the United States was a community built in the 12th, what I call the 1995. They come back. They were a family born in Washington, Washington State. They moved to Washington, they moved to Albuquerque, New Jersey, so they are a community that's a shard of the country. It would be difficult to get at the limits of the Muslim community with Tony Baird, George Bush, or Paul Martin, or Hugh Grant. There's just a lot of open areas. And essentially, that's what you raise. And if people raise, raise again, then don't raise, then raise again. That's just the way it is. And I think it's critical, and I think it's critical, to understand that we've become the migration of the Muslim people. Thank you. Thank you. Thank you.
judges: Ferguson, Callahan, Bolton